UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DODY RICCI,**<br><br>Plaintiff,<br><br>v.<br><br>**NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES,**<br><br>and<br><br>**STATE OF NEW JERSEY,**<br><br>Defendants. | **Civil Action Number:** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Dody Ricci, represented by counsel Farva Jafri, and brings this complaint against the State of New Jersey for discrimination on the basis of disability.

## NATURE OF THE CLAIMS

1. This is an action for monetary damages and a request for continuing workplace medical benefits, to redress Defendants' unlawful discrimination against Plaintiff, eventually forcing Plaintiff to quit her employment, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. Section 12101 *et seq.* ("ADA")

2. Upon learning that Plaintiff was disabled, namely that she suffered from asthma that was triggered by strong perfumes and colognes, Defendants did not adequately enforce any perfume or cologne restriction around Plaintiff, causing her asthma to constantly trigger, causing Plaintiff to

be relocated to different offices, to be taken to the Emergency Room at Hackensack Meridian Health JFK Medical Center, develop psychiatrically-diagnosed anxiety and Post-Traumatic Stress Disorder, and eventually be denied any accommodation, leading to her constructive discharge.

3. Defendants' discriminatory and tortious conduct showed a knowing, reckless and/or willful and malicious disregard for Plaintiff's rights. Defendants' unlawful conduct has caused and continues to cause Plaintiff to suffer economic damages of unemployment, costly asthma treatment and development of anxiety requiring expensive psychiatric treatment.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA. The court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. Section 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

6. This Court has personal jurisdiction over Defendants because one party is the state of New Jersey, and the other party, NJDCF, has its principal place of business in this district.

## PARTIES

7. Plaintiff Dody Ricci was a Family Service Specialist II (FSII) working for the New

Jersey Department of Children and Families (NJDCF). Plaintiff Ricci suffers from acute asthma, which is triggered by strong scents such as those from perfumes and colognes.

8. Defendant NJDCF's principal place of business is located at 50 East State Street, 2nd floor, Trenton, NJ  08625-0729.

9. Defendant State of New Jersey is a state located in the United States of America, and is responsible for funding and operating the NJDCF.  Upon information and belief, the State of New Jersey is responsible for operating, overseeing and controlling the NJDCF agency.

## ADMINISTRATIVE PROCEDURES

10. Plaintiff has filed charges with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff received a right to sue letter on August 18, 2020.  Plaintiff has timely filed her lawsuit pursuant to the Right to Sue letter she received from the EEOC.

11. Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

12. Plaintiff had been an employee at the Middlesex NJDCF since March 20, 2006, and had an impeccable work performance history with NJDCF.  At all relevant times, Plaintiff satisfactorily performed the requirements of her job.

13. Plaintiff suffers from acute asthma, which is exacerbated by strong odors and scents.

14. Plaintiff requested from Mark Kears on June 14, 2016 an ADA accommodation for her

3

asthma. Kears was the former supervisor of the ADA office at the Middlesex NJDCF. Specifically, Plaintiff requested that she be able to work from home to avoid any risks to her health (Exhibit A, E-mail from Dody Ricci to Mark Kears).

15. Plaintiff complained to Mr. Kears about Ms. Luciana Lyde's excessive cologne use, which exacerbated Plaintiff's asthma. In Plaintiff's e-mail, she also described her attempts to get Ms. Lyde to stop wearing such cologne, and Ms. Lyde's refusal to stop wearing said cologne on the basis of "religious beliefs" (Id.)

16. Plaintiff had already attempted to get Veronica Jackson (Plaintiff's former supervisor in Middlesex, NJ), Jennifer Montemuro (former casework supervisor of Plaintiff in Middlesex, NJ), and Adriana Rowe (Plaintiff's supervisor in Middlesex, NJ) to take action against Ms. Lyde's insistence on wearing strong perfume, but NJDCF did nothing.

17. Rather than accommodate Plaintiff's request to work from home, Mr. Kears transferred Plaintiff from Plaintiff's office in Middlesex, NJ to another office in Perth Amboy, NJ, where there would be fewer employees who could potentially trigger Plaintiff's asthma.

18. Plaintiff at her new office eventually came to deal with an administrative assistant wearing strong cologne, and on June 12, 2018, she contacted Mr. Marc Blumstein (Regional Personnel Coordinator at the Perth Amboy NJDCF) and Cheryl Moscera (supervisor of the ADA office at the Perth Amboy NJDCF) regarding the effect of this cologne on her asthma.

19. Plaintiff contacted her doctor four days later, on June 16, 2018 about the effect of this cologne on her asthma. Plaintiff's physician instructed Plaintiff to use her prescribed inhaler more frequently.

20. Plaintiff's office manager, Cammyline Mahaga-Ajala, sent out an email to the office on June 21, 2018 regarding employee sensitivity to strong scents and odors (Exhibit B, E-mail from Ms. Mahaga-Ajala to NJDCF employees).  The office manager also put up signs around the office, asking employees not to wear perfume or cologne. Employees at NJDCF tore those signs down. After this e-mail was distributed, employees began to wear even more perfume and cologne in indignation.  NJDCF took no action against these employees who tore down signs and wore more cologne, despite Plaintiff's pleas to enforce the message that management sent out in its e-mail to the Perth Amboy office.

21. Plaintiff did not suffer any adverse workplace health conditions related to her asthma for a period of time, but six months later, on December 5, 2018 Plaintiff Ricci had to again deal with a co-worker wearing strong cologne in the office, which prompted Plaintiff to rely heavily on her prescribed inhaler.

22. Plaintiff had further asthma issues due to strong cologne in the workplace on January 30, 2019 and February 5, 2019. The latter incident actually required Plaintiff to leave the room during a NJDCF training session.

23. Plaintiff had to call out sick on February 7, 2019 as a result of her asthma, due to the prevalent use of perfume and cologne at her office in Perth Amboy.

24. On March 28, 2019, Plaintiff e-mailed Marc Blumstein about her asthma and how it was being triggered through cologne use in the office (Exhibit C, E-mail from Plaintiff to Marc Blumstein).  Blumstein instructed Plaintiff to complain to the ADA unit.  Plaintiff took this action, and also complained to her supervisor, Karen Howard-Hennessy, on March 29, 2019, about Ms.

5

Farah Coleman's (Administrative Assistant at the Perth Amboy NJDCF) cologne. Ms. Howard-Hennessy informed Ms. Mahaga-Ajala, who then sent out another email regarding employee sensitivity to strong perfumes and cologne.

25. Despite the e-mail that Ms. Mahaga-Ajala sent out to the Perth Amboy office, Plaintiff still had to deal with Ms. Coleman's strong cologne and had another acute asthma attack in the workplace on May 7, 2019, which caused Plaintiff to actually have an emotional breakdown. Ms. Coleman brazenly disobeyed the e-mail that instructed employees to not wear perfume, and the NJDCF management refused to enforce this policy. Plaintiff told the ADA office how the prevalent use of strong scents was impacting her, both physically and psychologically.

26. Plaintiff Ricci was assigned to a new supervisor, Bartolomiel Kwiatkowski, on May 13, 2019 and took several days off to recover from her most recent asthma attack, triggered in the workplace.

27. Plaintiff Ricci contacted the ADA office, Mr. Kwiatkowski and an area director named Haydee Dalton-Zamora on May 28, 2019. The ADA office, Mr. Kwiatkowski and Ms. Dalton-Zamora told Plaintiff that she should allow ADA to complete their evaluation of Plaintiff's co-workers' conduct regarding Plaintiff's disability accommodation.

28. On May 29, 2019, Plaintiff Ricci explained to Jesenia Vargas (Plaintiff's Casework Supervisor) in detail Plaintiff's asthma triggers, the severity of Plaintiff's asthma and Ms. Coleman's use of perfume causing Plaintiff to suffer acute asthma attacks.

29. Plaintiff began experiencing asthma symptoms from Mr. Kwiatkowski's cologne and complained to him on June 11, 2019 about it, but her complaint was ignored.

30. Plaintiff Ricci had such a severe asthma attack on June 12, 2019 from Mr. Kwiatkowski's cologne that she ended up hospitalized and had to call out sick for a week.

31. Plaintiff was eventually diagnosed with anxiety and Post-traumatic Stress Disorder resulting from her frequent asthma attacks and NJDCF's mistreatment of Plaintiff due to her disability, and as a result, Plaintiff had to seek psychiatric care.

32. On or around July 31, 2019, Plaintiff wrote an email to Cheryl Moscera, explaining the severity of the situation. Plaintiff stated to Ms. Moscera that despite e-mails sent out by the office manager, employees were still using products in the office that triggered Plaintiff's asthma (Exhibit D, E-mail Exchange Between Ms. Moscera and Plaintiff). Again, no disciplinary action was taken against employees who continued to wear perfume or other strong scents in the Perth Amboy office.

33. On December 3, 2019, Plaintiff was denied any accommodation by the ADA office. The ADA office would not allow Plaintiff to work from home, and NJDCF refused to let Plaintiff transfer to another NJDCF office in Toms River, NJ.

34. Plaintiff Ricci's doctor advised that her work environment was hazardous to her health and Plaintiff Ricci had no choice but to quit her employment. Plaintiff resigned, and explained her position to both Mr. Blumstein and Ms. Dalton-Zamora (Exhibit E, Resignation Letters).

35. Defendants, and their employees, discriminated against Plaintiff on the basis of her disability, by recklessly disregarding her need for an appropriate accommodation, and by not enforcing any restrictions on their employees' use of cologne or strong scents that triggered

Plaintiff's asthma.

36. Defendants, and their employees, also discriminated against Plaintiff on the basis of her disability, by refusing to provide her with a reasonable accommodation.

37. Defendants, and their employees, constructively discharged Plaintiff by presenting her with the false choice of either suffering from asthma and risking death, or quitting her job.

38. Defendants, and their employees, harassed and abused Plaintiff by their excessive use of cologne, perfume and strong scents, their defiance of any orders to cease using said scents, and their willful disregard of Plaintiff's disability.

39. As a result of Defendants' actions, Plaintiff has suffered monetary and/or economic damages, including, but not limited to, the loss of past and future income, compensation and other benefits.

40. As a result of Defendants' actions, Plaintiff has suffered severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, anxiety, post-traumatic stress disorder, loss of self-esteem and self-confidence, and emotional pain and suffering.

41. Defendants' discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's civil rights.

**FIRST CAUSE OF ACTION**

**(Discrimination and Harassment in Violation of ADA)**

**Against NJDCF**

42. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 41, inclusive, as if fully set forth herein.

43. Defendant NJDCF has discriminated against Plaintiff in violation of the ADA by denying her equal terms and conditions of employment, including but not limited to, denying her a reasonable work accommodation or transfer to another branch, because of her disability, because Defendant regarded Plaintiff as disabled, and/or because of Plaintiff's record of disability.

44. Defendant NJDCF has discriminated against Plaintiff in violation of the ADA by denying her equal terms and conditions of employment, including but not limited to, constructively discharging Plaintiff, despite her qualifications and impeccable work history for NJDCF, because of her disability, because Defendant regarded her as disabled, and/or because of Plaintiff's record of disability.

45. Defendant has discriminated against Plaintiff in violation of the ADA by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of her disability, because Defendant regarded her as disabled, and/or because of Plaintiff's record of disability.

46. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

47. Defendant's unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

48. This disability-based discrimination against Plaintiff Ricci by employees of the NJDCF has caused her not only to lose her job but also to run up significant medical bills and develop long-term negative repercussions to her respiratory health and psychiatric health, including exacerbated respiratory illness, post-traumatic stress disorder and anxiety as a result of her fears of sudden asthma attacks due to constant asthmatic triggers in the workplace.

## SECOND CAUSE OF ACTION

### (Violation of ADA)

### Against NJDCF

49. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 48, inclusive, as if fully set forth herein.

50. Defendant NJDCF violated Title I of the ADA, which prohibits employers from discriminating against a qualified individual on the basis of disability.

51. An employer will be found to have discriminated against an employee with a disability by not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business.

52. Defendant NJDCF violated the ADA by not providing a reasonable accommodation to

Plaintiff, an individual who had been employed by NJDCF for 13 years, and by not demonstrating any undue hardship on its course of business through a proposed accommodation.

53. As a direct and proximate result of Defendant NJDCF's violation of the ADA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

54. Defendant NJDCF's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION

**(Violation of the New Jersey Law Against Discrimination)**

**Against NJDCF**

55. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 54, inclusive, as if fully set forth herein.

56. Plaintiff, Dody Ricci, has the disability of asthma.

57. Plaintiff was able to perform the essential functions of her job with a reasonable accommodation of (i) being transferred to the branch in Toms River, NJ; (ii) having other employees stop wearing strong scents in the work place; or (iii) being allowed to work from home. Plaintiff had worked for NJDCF for thirteen years.

58. NJDCF was aware of Plaintiff's disability and her desire for a reasonable accommodation. Plaintiff made incessant requests for the management team at NJDCF to provide Plaintiff with a reasonable accommodation.

59. There were several options for a reasonable accommodation that would have allowed

11

Plaintiff to perform the essential functions of her job.

60. NJDCF denied a reasonable accommodation to Plaintiff.

61. As a direct and proximate result of Defendant NJDCF's violation of the NJLAD, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

62. Defendant NJDCF's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the NJLAD for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

### (Negligent Hiring, Retention and Supervision)

### Against NJDCF

63. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 62, inclusive, as if fully set forth herein.

64. In hiring, training and supervising supervisory personnel, Defendant NJDCF has a duty to prevent such personnel from engaging in discriminatory and/or tortious conduct.

65. Defendant NJDCF negligently and/or recklessly breached its duty of care in hiring, training, retaining and supervising staff like Farah Coleman at NJDCF, who acted in a discriminatory and/or tortious manner toward Plaintiff.

66. Defendant knew and/or should have known Farah Coleman and other staff members would act and/or acted in a discriminatory and/or tortious manner toward Plaintiff, and failed to exercise adequate care to prevent and/or remedy such conduct by its supervisory personnel.

67. As a direct and proximate result of Defendant NJDCF's breach of its duty of care, Plaintiff

has suffered and continues to suffer, monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

68. As a direct and proximate result of Defendant NJDCF's breach of its duty of care, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, post-traumatic stress disorder, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

69. Defendant's negligence was reckless and in knowing disregard of its legal obligations to take steps to prevent such conduct under both federal and state law, for which Plaintiff is entitled to an award of punitive damages.

## **FIFTH CAUSE OF ACTION**

### **(Intentional Infliction of Emotional Distress)**

### **Against NJDCF**

70. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 69, inclusive, as if fully set forth herein.

71. Plaintiff had been working for NJDCF for thirteen years. She developed severe asthma, which was triggered by strong scents, like cologne. Plaintiff encountered these asthma triggers at work and requested a reasonable accommodation from her employer. Rather than help Plaintiff with an accommodation or penalize staff members who purposely wore strong perfumes and colognes, NJDCF did not help Plaintiff with either an accommodation or with keeping staff members from wearing excessive cologne.

72. The more Plaintiff complained about the excessive use of scents at the Perth Amboy office,

the more staff members would wear and use these scents, triggering Plaintiff's asthma.

73. Defendant's conduct and treatment of Plaintiff, was extreme and outrageous so as to exceed the bounds of decency in a civilized society.

74. By NJDCF's actions and conduct, Defendant intended to and did intentionally or recklessly cause Plaintiff severe emotional distress, which has required Plaintiff to undergo psychiatric therapy.

75. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer severe emotional distress, for which she is entitled to an award of damages.

76. Defendant's extreme and outrageous conduct was knowing, malicious, willful and wanton, entitling Plaintiff to an award of punitive damages.

## **SIXTH CAUSE OF ACTION**

**(Respondeat Superior)**

**Against the State of New Jersey**

77. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 76, inclusive, as if fully set forth herein.

78. The State of New Jersey funds, operates and controls its state-designated agencies, including the NJDCF. According to the NJDCF's website, "The New Jersey Department of Children and Families is the state's first Cabinet-level agency devoted exclusively to serving and supporting at-risk children and families." Also, according to the NJDCF's website, the agency's commissioner was appointed by the Governor of New Jersey to lead the agency (www.nj.gov/dcf).

79. The tortious acts of intentional infliction of emotional distress and negligent hiring, retention and supervision, were committed within the scope of employment by the State of New Jersey and NJDCF's bad actors, including, but not limited to, Farah Coleman.

80. As a direct and proximate result of Defendant State of New Jersey's conduct, Plaintiff has suffered and continues to suffer severe emotional distress, for which she is entitled to an award of damages.

81. Defendant State of New Jersey's extreme and outrageous conduct was knowing, malicious, willful and wanton, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the state of New Jersey;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory treatment of her and otherwise unlawful conduct, as well as to take such affirmative action, including but not limited to reinstatement, as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and or compensatory damages, including but not limited to, compensation for her exacerbated respiratory illness, severe mental anguish, depression, anxiety, humiliation, embarrassment, post-traumatic stress disorder and emotional distress;

F. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus pre-judgment interest;

G. An award of punitive damages;

H. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | JAFRI LAW FIRM |
| Dated: November 16, 2020 | By: _/s/Farva Jafri_____ |
|  | Farva Jafri |
|  | 50 Evergreen Row |
|  | Armonk, NY 10504 |
|  | farva@jafrilawfirm.com |
|  | t: (800)593-7491 |
|  | f: (224)228-6721 |
|  | *Counsel for Plaintiff* |